Barnard, P. J.
In May, 1882, the plaintiff was arrested for threatening violence to his son and the defendant, and *565 while under arrest certificates were procured from the physicians that he was insane, and by force of these certificates he was carried to the Utica asylum where he was forcibly detained for a little over three months when he was discharged through a writ of habeas corpus.
The plaintiff avers in his complaint that these proceedings were incited by the defendant and that the acts resulting in the imprisonment were malicious acts and without any probable cause to suppose them. If this is proven by the evidence the plaintiff has a right to recover the damages he suffered by them.
I am unable to hesitate in the conclusion that the defendant was the prime mover in the arrest. There was ill-feeling upon the part of Crosby and the plaintiff’s son against the plaintiff. The subject of the controversy was the title to a house in Yonkers. Certain lands had been transferred by plaintiff to his wife through Crosby, and the wife had died and there was dissatisfaction that certain measures for the family protection as was claimed had not been carried out.
While these difficulties were pending the arrest took place. The complaint was made by defendant’s son, and the defendant admits in his answer a qualified support of the son in his proceedings. The case shows abundantly a state of facts from which a jury could infer that the proceedings were those of the defendant and the jury have so found from the evidence. The plaintiff was not insane. Assuming a doubtful casethe finding of the jury would be upheld. The plaintiff was a witness and he detailed the whole transaction from its commencement to its close. I can see no sign of a disordered intellect. Were the acts malicious ? Malicious in the legal acceptation of that term. Were they done with a deliberate intent to injure? Assuming that the proceeding were the acts of the defendant they show strong case of malice and fraud in the accomplishment of the purpose finally reached. The criminal arrest removed the plaintiff from his home. He was kept until late the next day by the officer who made the arrest. His request to be taken before the judge who issued the warrant was denied, as was his request for counsel to aid him in his trouble. In the meantime a certificate was procured from the physicians, one of whom did not examine the plaintiff and the other had no sufficient evidence for his act, and then the plaintiff was taken to Utica. His request to see his family was denied. The defendant was present when one of the certificates was made out. He disapproved the discharge and employed counsel for that purpose.
*566 The jury have found the acts to have been malicious. The evidence I deem sufficient to support the verdict.
The order granting a new trial should, therefore, be reversed, with costs.
Pratt, J.
The circuit judge set aside the verdict solely upon the ground that the charges contained in the affidavit, upon which the warrant issued, were true; that there was probable cause for defendant to believe that plaintiff was, at the time, insane, and that malice or bad faith, on the part of defendant, were not shown.
These questions were all submitted to the jury, in a charge extremely favorable to defendant. The considerations, which made for defense, were carefully pointed out, and the whole history of the trial shows that the utmost latitude was accorded to the defendant and was availed of by his able counsel.
The unpopular beliefs entertained by the plaintiff, though not, perhaps, very relevant, were made the subject of exhaustive investigations. He was interrogated as to his belief in the divinity of Christ. The discrepancy between his views and the creed of the church, of which he was a member, was dwelt upon, and anything in his life or opinions, that could be supposed to influence the jury, was brought into service against him. The jury were charged that if plaintiff had, at the time of his arrest, been guilty of the offense charged, that, if he was insane at that time, or if defendant believed him to be so, the verdict should be for defendant.
The necessity for plaintiff to establish that defendant was actuated by malice, was explained, and the slight motive, suggested as the ground-work of such malice, was commented upon very favorably to defendant. Numerous, witnesses were examined as to threats made by plaintiff against his son and the defendant, and, from the nature of the testimony, it could only be met by plaintiff’s own oath. The ordeal to which he was subjected was of extreme severity, and the verdict shows that, in the opinion of the jury,, it was successfully endured. The verdict, establishes that, in their opinion, a sane man, innocent of any offense, who had given no ground to be suspected of either insanity or crime, was arrested upon a false pretense, and incarcerated for months as a lunatic.
The testimony shows that, during his confinement, inquiring friends were forbidden to see him, and bis efforts, to communicate with the outside world were thwarted by sending his letters to his son,. who suppressed them, apparently to prevent knowledge of him reaching those who might be inclined to investigation.
*567 It does not appear that, while in the asylum, any concern for his welfare was shown by any of those who were active in promoting his imprisonment.
In connection with the fact that he was allowed no hearing upon the warrant, and that when, after long delay, he was at last brought into court, he was at once discharged; enough was shown to render it plain that the verdict of the jury should not be lightly interfered with.
We have, therefore, examined with care the grounds upon which the circuit judge based his action in setting aside the verdict, and are constrained to dissent from his conclusions.
The assault upon the plaintiff’s son, which is referred to in the affidavit upon which the warrant issued, was so trivial as to render any discussion of it absurd.
We do not find from the evidence that plaintiff ever contemplated bodily harm to any person, or that there was anything in his previous life or character which could reasonably give any ground for apprehending such action on his part.
The “threats” appear to be nothing more than expressions of irritation and anger, which were not, perhaps, justified by existing facts, but which could not reasonably cause alarm.
The jury may have doubted if the threats were ever made, or they may have believed that they were understood to be merely strong expressions of anger and irritation, without any design to do harm. We think it cannot be said that the charges contained in the affidavit are conclusively shown to be true. On the contrary, we think the question was fairly submitted to the jury, and their conclusion should not be interfered with. So the question whether the defendant had probable cause to believe the plaintiff insane, was fairly submitted to the jury.
The testimony is to the effect that two physicians, with whom defendant consulted, expressed to him an opinion that plaintiff was insane.^ These physicians testified upon the trial, and the circuit judge well said that they seemed to have no hesitation in certifying to insanity, but when they were examined upon the supposed “delusion” of the patient, they were utterly unable to give any intelligent account of the matter.
We do not think it can be said on the facts of this case, as a question of law, that “ probable cause ” existed for beliving plaintiff insane. Where nothing is known or can be ascertained of a person but the fact that two physicians certify that he is insane, it may afford reasonable ground to believe the fact to be as certified. But the jury may have thought that where a man’s record for a life-time is *568 in his favor, reasonable regards for his rights should prompt that before giving credit to the certificate, some inquiry should be made of the physicians as to the grounds of their belief, in which case their inability to give any intelligent account of the supposed delusion would perhaps have been apparent to defendant, as it subsequently was to the circuit judge.
If the jury took this view of the duty of defendant we cannot, as matter of law, say they were wrong.
The jury may have thought that had defendant believed the plaintiff to be insane, he would have been allowed an examination.
Whether the defendant was or was not actuated by malice was properly submitted to the. jury; we are not able to say their decision was wrong.
Defendant’s counsel urge that the remarks of the trial judge upon the measure of damages were calculated to prejudice defendant before the jury. We do not find in those remarks any matter for criticism, and see no reason to think they swelled the damages. To the suggestion that the damages are excessive, we are not able to agree. If the arrest and incarceration for three months, without a bearing and with the circumstances of aggravation shown in the evidence, were, as found by the jury, malicious and without probable cause, the verdict must be considered moderate, but if we regard it as large, we might hesitate to interfere in a matter so largely in the province of the jury. There is so much in this case upon which honest men. may differ, that full effect should be given to the decision .of the tribunal by which the facts are to be determined.
The conversation testified to by plaintiff’s son, in which he at the age of fifteen years, announced to his father that he could not make such remarks in his (the son’s) presence, would by some be regarded as manly and commendable. Others might think it manifested a spirit which, persisted in, would finally produce the estrangement that resulted in. this incarceration of the father in a mad house. The jury have seen and heard the witnesses; we cannot say their verdict was caused by passion or prejudice, nor that the damages are excessive.
It results from these views that the order appealed from should be reversed, and the plaintiff have judgment on the verdict.